UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11302-NG

| | |
|---|---|
| AFTERMATH CLEANING COMPANY, INC., <br>     Plaintiff, <br> v. <br> AFTERMATH, INC., <br>     Defendant. | MOTION (ASSENTED TO) TO SUPPLEMENT THE RECORD ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

      The plaintiff, Aftermath Cleaning Company, Inc., requests leave of Court to supplement the record on its motion for a preliminary injunction with the affidavit of Lieutenant Thomas LaFleur of the North Smithfield Police Department of North Smithfield, Rhode Island.  The original affidavit is attached hereto as Exhibit A.  This motion was assented to by defendant's counsel.  This affidavit describes another incident of actual confusion which has come to the plaintiff's attention.  In the affidavit, Lt. LaFleur, whose police department is a customer of plaintiff, describes a serious incident of confusion that occurred within his department as a result of defendant's conduct in entering the same markets, with the same name, for the same business.

      As grounds for this motion, plaintiff states that this incident came to light after it filed its motion for a preliminary injunction and that defendants are receiving notice of it well prior to the hearing on the preliminary injunction scheduled for October 3, 2005.  As further grounds for this

1

motion, plaintiff states that this affidavit describes circumstances critical to the Court's consideration of plaintiff's motion for a preliminary injunction.

Respectfully submitted,

AFTERMATH CLEANING COMPANY, INC.

By its attorneys,

Dated:  September 28, 2005

/s/ Brenda M. Cotter
Brenda M. Cotter (#548004)
Samantha L. Gerlovin (#652389)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201

CERTIFICATION PURSUANT TO L.R. 7.1(A)(2)

I hereby certify that I have conferred with counsel for the defendant in this action in good faith with regard to the relief sought in this motion and defendant's counsel has assented to it.

/s/Brenda M. Cotter
Brenda M. Cotter

CERTIFICATE OF SERVICE

I, Brenda M. Cotter, counsel for the Plaintiff, do hereby certify that on this day, September 28, 2005, I served a copy of the foregoing Motion To Supplement The Record On Plaintiff's Motion For A Preliminary Injunction:

**Via Electronic Notice**
Edward F. Perlman, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Ave.
Boston, MA 02210-2266

**Via Federal Express**
Michael A. Hierl, Esq.
Olson & Hierl, Ltd.
20 N. Wacker Drive
36th Floor
Chicago, IL 60606

/s/Brenda M. Cotter

Dated: September 28, 2005

# 1389763 v1 - cotterbm - 025173/0001

# EXHIBIT A

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFTERMATH CLEANING COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> AFTERMATH, INC., <br><br> Defendant. | CIVIL ACTION NO. 05-11302 NG |

### AFFIDAVIT OF LIEUTENANT TOM LAFLEUR

I, Lieutenant Tom LaFleur, do hereby depose and state as follows:

1.  I am a lieutenant in the North Smithfield Police Department in North Smithfield, Rhode Island. I have worked in the North Smithfield Police Department for 16 years, and have been a lieutenant in the department since 2000.

2.  The North Smithfield Police Department has had an excellent business relationship with Aftermath Cleaning Company, Inc. ("Aftermath") and Michael Wiseman for the past four years. All of the officers in my department are familiar with Aftermath and we typically contact Aftermath whenever the department has a bio-hazard scene that needs to be cleaned. We keep the Aftermath phone number in our dispatch rolodex.

3.  In or about August 30, 2001, Mr. Wiseman conducted bio-hazard training for all of the police officers in the North Smithfield Police Department. In connection with the training, he provided all of the officers in the department with duffle bags displaying the "Aftermath" logo, and containing bio-hazard gear and equipment. Since the training, Mr. Wiseman has

1

continued to send the new officers in my department duffle bags filled with the gear and equipment.

4. Aftermath has always been extremely reliable, and Mr. Wiseman has gone out of his way to maintain a good working relationship with my department. Officers in my department have called Aftermath's 800 phone number at all hours of the day and evening and asked the answering service to get in touch with Mr. Wiseman. Regardless of the time of day, Mr. Wiseman has faithfully returned our calls, typically in approximately 10 minutes, and assured us that he will arrive at the clean-up scene within an hour, even late at night.

5. Approximately one month ago, on Friday, August 26, 2005, in the evening, a suspect bled in my department's processing room and on our fingerprint scanner. An officer in my department directed our dispatch personnel to contact Aftermath to request that those areas be cleaned and decontaminated.

6. I was not on duty that evening, but the officer in charge informed me later that dispatch tried to contact Aftermath by calling the 800 number listed on a magnet recently posted on our dispatch console. We received the magnet in a recent mailing. A copy of the magnet which he referred to for this phone number is attached as <u>Exhibit A</u>.

7. The officer informed me that when dispatch called that number, they had to call four times before they received a call back. When the company finally called back, they said they would not be able to clean up the site until Saturday between 8 a.m. and noon. This seemed to be a slow response time, but the officer assumed that Aftermath was just very busy, and agreed to wait until Saturday at noon.

8. On Saturday, no one from the company that we assumed to be Aftermath showed up to clean the contaminated areas. We did not hear from anyone at Aftermath to explain why

2

no one had shown up. This presented a large inconvenience to my department, because our booking room was out of service while the area was contaminated, so we needed to use another department's booking room until the scene was cleaned.

9.  On September 2, 2005, I was on duty. No one at my department had yet heard from Mr. Wiseman or anyone from Aftermath, so I suspected that something was wrong. I decided to contact Aftermath to find out why no one had shown up yet.

10. To reach Aftermath, I called the same 800 number on the magnet on our dispatch console that dispatch had called on the previous Friday night and asked to speak to Mr. Wiseman. The person with whom I spoke told me that he did not have Mr. Wiseman's extension and referred me to the main office.

11. I called the main number that they gave me and the person who answered said that no one named Wiseman was at the company.

12. I then called the 800 number on the magnet again and they patched me through to "Tim." At this point, I still thought that I was dealing with Mr. Wiseman's company, Aftermath. I asked Tim where Mr. Wiseman was, and Tim responded that I had the wrong Aftermath. I was extremely confused and explained that I had called this 800 number based on a magnet which said "Aftermath." The magnet I was referring to is the magnet which is attached as <u>Exhibit A</u>.

13. Tim told me that Mr. Wiseman worked for "Aftermath Cleaning Company, Inc." and that I had called "Aftermath, Inc." Tim explained that he was starting to get his company, Aftermath, Inc., running in my area. I told Tim that I was actually looking for Mr. Wiseman's company, and that I had contacted Aftermath, Inc. by accident. I explained that I had a long-standing business relationship with Mr. Wiseman's company. I asked Tim how I could get in

3

touch with Mr. Wiseman, and Tim suggested that I look up Aftermath Cleaning Company, Inc. on the Internet.

14. After I ended my conversation with Tim, I immediately looked up Aftermath's contact information in my personal rolodex and noted that the number was different than the one on the magnet. I then called the correct Aftermath 800 number and left a message with the answering service for Mr. Wiseman to call me. Mr. Wiseman called me back in approximately 11 minutes. This indicated to me that I was dealing with the right "Aftermath," since this was the service I was accustomed to receiving from Mr. Wiseman and his company.

15. In my mind, I associate the word "Aftermath" with Mr. Wiseman's company. I was extremely confused by information on the magnet that had been sent out by Aftermath, Inc., which I believed to be from Aftermath Cleaning Company, Inc. Further, had I not discovered the error, I would have assumed that it was Mr. Wiseman's company, Aftermath, which had failed to promptly return my calls or show up to perform the job as promised.

Signed under the pains and penalties of perjury this 23rd day of September 2005.

_____
Lieutenant Tom LaFleur

# 1388179 v1 -- 025173/0001

4



# EXHBIT A

**EXHBIT A**

**Aftermath, Inc.**
*A Professional Cleanup Company Specializing in:*
- *Homicides*
- *Suicides*
- *Unattended Deaths*
- *Meth Labs*

24-Hour Emergency Dispatch
**800-366-9923**
LOCALLY OWNED AND OPERATED